IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION                                                                                    PLAINTIFF

v.                          CIVIL NO. 5:23-cv-05164-TLB

CRAIN AUTOMOTIVE
HOLDINGS LLC                                                                              DEFENDANT


## DISCOVERY ORDER

This case is before the undersigned because of a discovery dispute which has arisen between the parties.  During the deposition of Charging Party Galen L. Taylor (Taylor), counsel for the EEOC asserted the attorney client privilege to questions being asked by counsel for Defendant Crain Automotive Holdings LLC (Crain). Communications between counsel deteriorated on related subjects, and the undersigned conducted a recorded telephone call during the deposition. Deferring on the issue of whether a Charging Party has an attorney client relationship with the EEOC, the Court directed the parties to finish Taylor's deposition, to the extent possible, but to hold open the deposition while parties submitted letter briefing on the attorney client privilege issues. The parties have submitted their letter briefing and the issues essentially revolve around (1) whether communications between Taylor and the EEOC are attorney-client privileged; and (2) whether communication between Taylor and his prior lawyer are privileged and/or whether Taylor has waived the privilege by his deposition testimony.   The Court also addresses related discovery issues, deadlines, and the resumption of Taylor's deposition.

## Law on Attorney-Client Privilege and Work Product Doctrines

Discovery in federal court is governed by the Federal Rules of Civil Procedure, and Rule 26(b)(1) provides that

> [p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1). Rule 501 of the Federal Rules of Evidence supplies the process by which federal courts are to determine privilege:

> The common law – as interpreted by United States courts in the light of reason and experience – governs a claim of privilege unless any of the following provides otherwise: the United States Constitution; a federal statute; or rules prescribed by the Supreme Court. But in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.

Fed. R. Evid. 501.   The Federal Rules of Evidence provide that evidentiary privileges are "governed by the principles of the common law ... in the light of reason and experience." *United States v. Jicarilla Apache Nation*, 564 U.S. 162, 169 (2011) (cleaned up). Pursuant to Rule 501, where state law supplies the rule of decision, state privilege law applies; otherwise, federal law governs the privilege analysis. *See Von Bulow by Auersperg v. Von Burlow*, 811 F.2d 136, 141 (2nd Cir. 1987); *see also Wm. T. Thompson Co. v. Gen. Nutrition Corp.*, 671 F.2d 100, 103 (3rd Cir. 1982).  Here, the Court looks to federal common law for guidance. *Von Burlow*, 811 F.2d at 141.

Of the various recognized privileges, the attorney-client privilege – appearing as early as the sixteenth century – is widely considered to be the oldest and most respected of them.  *See Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ("The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law."); s*ee also United*

*States v. Bauer*, 132 F.3d 504, 510 (9th Cir. 1997) ("[T]he attorney-client privilege is, perhaps, the most sacred of all legally recognized privileges…."). "Generally, it is well established under common law that confidential communications between an attorney and a client are privileged and not subject to disclosure absent consent of the client." *United States v. Horvath,* 731 F.2d 557, 562 (8th Cir. 1984). The privilege's purpose is "to encourage full and frank communications between attorneys and their clients and thereby promote broader public interest in the observance of law and administration of justice." *Upjohn,* 449 U.S. at 389.   Preservation of the attorney-client privilege is "essential to the just and orderly operation of our legal system." *United States v. Ivers,* 967 F.3d 709, 715-716 (8th Cir. 2020).   Simply described, "[a] client may refuse to disclose confidential communications made for purpose of facilitating or rendering professional legal services to the client by his attorney or a lawyer representing another in a matter of common interest."  *In re Bieter Company,* 16 F.3d 929, 935 (8th Cir. 1994)

Despite the importance of the attorney-client privilege, it must be narrowly construed, protecting only disclosures necessary to obtain informed legal advice which may not have been made absent the privilege. *See Fisher v. United States*, 425 U.S. 391, 403 (1976).  A party asserting the privilege must the lawyer was "engaged or consulted" by the client for the "purpose of obtaining legal services or advice services or advice that a lawyer may perform or give in his capacity as a lawyer, not some other capacity." *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) (citations omitted).   "The privilege only protects disclosure of communications; it does not protect disclosure of the underlying facts by those who communicated with the attorney:  '[T]he protection of the privilege extends only to communications and not to facts.'"  *In re Bieter Co.,* 16 F.3d 929, 941 (8th Cir. 1994) (quoting *Upjohn,* 449 U.S. at 395).

Communications which fall outside the scope of the attorney-client privilege may nonetheless be protected by the work-product doctrine. *Hickman v. Taylor,* 329 U.S. 495 (1947). While the purpose of the attorney-client privilege "is to encourage clients to make a full disclosure of all favorable and unfavorable facts to their legal counsel," *In re Murphy,* 560 F.2d 326, 337 (8th Cir. 1977), the work-product doctrine "functions not merely and (perhaps) not mainly to assist the client in obtaining complete legal advice but in addition to establish a protected area in which the lawyer can prepare his case free from adversarial scrutiny." *Lamar Advertising of S.D., Inc. v. Kay*, 267 F.R.D. 568, 575 (D. South Dakota, April 12, 2010) (citations omitted).  The work-product doctrine prevents "unwarranted inquiries into the files and mental impressions of an attorney" and "recognizes that it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusions by opposing parties and their counsel." *Simon v. G.D. Searle & Co*., 816 F.2d 397, 402 (8th Cir. 1987). "The scope of work product protection is broader than the protection the attorney-client privilege provides because the work product doctrine is not confined to confidential communications between an attorney and a client, but rather extends to protect all 'documents and things' prepared in 'anticipation of litigation or for trial.'" *Columbia Ins. Co. v. Tibbott*, 2012 WL 13027067, at *5 (D. Minn. June 21, 2012) (quoting *Onwuka v. Fed. Ex. Corp.,* 178 F.R.D. 508, 512 (D. Minn. 1997)). Work product may consist of "raw factual information," or it may include the attorney's "mental impressions, conclusions, opinions, or legal theories." *Baker v. General Motors Corp*., 209 F.3d 1051, 1054 (8th Cir. 2000).

### De Facto Attorney-Client Relationship

The case law is not definitive regarding whether or when the EEOC enters an attorney-client relationship with the aggrieved individuals/Charging Parties whose interests it represents. *EEOC v. Morgan Stanley & Co., Inc*., 206 F. Supp. 2d 559 (S.D. N.Y. 2002).  Various courts have

found a de facto attorney-client privilege to exist between the EEOC and aggrieved individuals; some decisions arise in Age Discrimination in Employment Act (ADEA) litigation and some decisions are made in other contexts but rely upon case law developed in ADEA cases.  A sample of those cases, many cited in briefing by the EEOC and Crain, include:  *EEOC v. International Profit Associates, Inc.,* 206 F.R.D. 215, 219 (N.D. Ill. March 27, 2002); *EEOC v. Chemtech Int'l Corp.*, 1995 WL 608333, at *1-2 (S.D. Tex. 1995) (ADA case relying on ADEA case law); *Bauman v. Jacobs Suchard*, 136 F.R.D. 460, 462 (N.D.Ill.1990) (communications between the EEOC and employees in ADEA cases are privileged because an individual's right of action is terminated when EEOC brings ADEA suit); *EEOC v. NEBCO Evans Distribution, Inc.*, WL 416423, at *4 (D. Neb. 1997) (finding a de facto attorney-client relationship when the EEOC cuts off the applicants' private right of action); *EEOC v. Collegeville/Imagineering Ent.,* 2007 WL 158735 (D. Ariz. January 17, 2007);  *EEOC v. Johnson & Higgins*, Inc., WL 778369, at *4 (S.D.N.Y 1998) (ADEA case); *EEOC v. HBE Corp.*, 1994 WL 376273 (E.D.Mo.1994) (Title VII case relying on ADEA case law, finding a common interest between aggrieved party and EEOC); *Gormin v. Brown-Forman Corp.,* 133 F.R.D. 50, 53 (M.D. Fla. 1990) (applying same analysis in ADEA and Title VII actions);  *EEOC v. Int'l Profit Assocs., Inc.,* 206 F.R.D. 215 (N.D. Ill. 2002) (Title VII case relying on ADEA case law); *but compare with EEOC v. McDonnell Douglas Corp.*, 948 F. Supp. 54, 55 (E.D. Mo. 1996) (finding when former employees have not filed a charge of discrimination nor sought EEOC representation, the EEOC is thus acting on its own authority and not as the aggrieved parties' representative).

Crain argues the undersigned should not make the same mistake courts have been making for thirty years but observe a critical distinction based on whether the Charging Party retains the right to bring private action.  Crain points out that when an aggrieved party makes an ADEA

discrimination claim and the EEOC chooses to move forward with the complaint, the action is brought by the EEOC on behalf of the charging or aggrieved parties who waive their right to bring private actions.  29 U.S. Code § 623; *see also EEOC v. Enterprise Leasing Comp.*, 2024 WL 1210364 (S.D. Fla. March 21, 2024) (ADEA). Under these circumstances, says Crain, the EEOC should be viewed as representing the aggrieved party.  The result should be different, however, when Title VII claims are being pursued by the EEOC because – in Title VII actions – the Charging Parties/aggrieved persons maintain the right to bring their own private actions even where the EEOC pursues their case.[1]  *See* 42 U.S.C. § 2000e; *EEOC v. Waffle House, Inc.,* 534 U.S. 279 (2002).  Acknowledging a plethora of inconsistent caselaw, Crain highlights *EEOC v. HBE Corp.* – a Title VII case which Crain says was wrongly decided – when asking the undersigned not to follow *HBE* (or other Title VII cases which incorrectly relied upon ADEA analysis) when determining whether a de facto relationship exists between the EEOC and Taylor.  Looking instead to the reasoning of *Bauman,* Crain argues that under Title VII, the EEOC and aggrieved individuals are separate parties who are not entitled to assertion of the attorney-client privilege.  In support, Crain points out that Taylor has not sought to be added as a party to the EEOC's litigation and has not filed a separate action against Crain.

While Crain's argument is well-constructed, the undersigned declines to parse a sizeable body of law so strictly.  Instead, the Court finds an aggrieved party can establish manifestation of assent to be represented by the EEOC and that manifestation may be enough to support existence of an attorney-client relationship and its privilege. *See EEOC v. CRST Van Expedited, Inc.,* 2009

---

[1] The EEOC possesses statutory authority to bring a Title VII action in federal court, but this authority was "intended to supplement, not replace, the private action." *See Gen. Tel. Co. of the Nw. v. Equal Emp. Opportunity Comm'n*, 446 U.S. 318, 326 (1980).  Under Title VII, the aggrieved may bring their own action after the exclusive jurisdiction of the EEOC expires (180 days) or they may also intervene in the action. *See* 42 U.S.C. § 2000e.

WL 136025 (N.D. Iowa Jan. 20, 2009) (attorney client relationship does not begin unless the employee asks for the EEOC's advice); *Gormin,* 133 F.R.D. at 53 (If an individual "has expressly asserted his desire to have EEOC counsel render him confidential legal advice, and that desire is demonstrable through affidavits or other documentation... then [the court] may conclude that EEOC counsel has an attorney-client relationship with that individual."); *see also EEOC v. Mitsubishi Motor Mfg. of America, Inc.,* 960 F. Supp. 164, 168 (C.D. Ill. 1997) (EEOC has "legitimate interest in communicating legal advice and information to those persons that it will potentially represent in this action," *citing Gulf Oil Co. v. Bernard*, 452 U.S. 89 (1981)). Whether an attorney-client relationship has been formed is not defined by a bright-line rule; the circumstances alleged to have created the relationship must be evaluated with the general requirement that both the attorney and client have consented, expressly or implicitly, to the formation of the relationship. *See Diversified Indus., Inc. v. Meredith*, 572 F.2d 596, 602 (8th Cir. 1977) (applying a case-by-case analysis to determine existence of an attorney-client privilege).

Without any standard metric for evaluating assent to representation by the EEOC, the undersigned finds that, in most instances, documentation of the de facto relationship should take the form of a declaration (or affidavit) signed by the aggrieved or charging party, or a letter, email or other written communication from the aggrieved party to the EEOC which reflects assent to representation.  For example, see *EEOC v. Scottsdale Healthcare Hospitals*, 2023 WL 5206131 (D. Ariz. August 14, 2023) where the Curt found such a relationship to exist "when an individual contacted the EEOC through questionnaires and phone calls, consulted the EEOC with an intent to seek legal advice, or signed an affidavit stating a belief that an attorney-client relationship existed". The EEOC bears the burden of sustaining the privilege.  *EEOC v. Johnson & Higgins, Inc.,* 1998 WL 778369 (S.D.N.Y. Nov. 6, 1998).

Here, although the EEOC represents Taylor's interests, the EEOC has not provided any evidence to the undersigned that Taylor has manifested – in any form – assent to be represented by the EEOC.

### Common Interest Doctrine

The EEOC urges application of the common interest doctrine to shield communications with Taylor from disclosure. *EEOC v. HBE Corp.,* 1994 WL 376273 at *2 (E.D. Mo. May 19, 1994). Courts within the Eighth Circuit have described the common interest doctrine as an exception to waiver of the attorney-client privilege in a situation where a party discloses otherwise privileged information to a third-party with whom it shares a common interest. *Ploen v. AIG Specialty Ins. Co.,* 2022 WL 2208328, at *6 (D. Minn. June 21, 2022), *aff'd,* 2022 WL 4533800 (D. Minn. Sept. 28, 2022). Following *In re Grand Jury Subpoena Duces Tecum,* 112 F.3d 910, 922 (8th Cir. 1997), where the Eighth Circuit examined whether a common interest existed between the White House and Hilary Clinton, courts in this Circuit have varied in application of the doctrine. *See Williams v. BHI Energy I Power Services, LLC,* 2022 WL 17485550 (D. Minn. Dec. 7, 2022) (discussing cases).

The undersigned previously has been persuaded by an unpublished decision of U.S. District Court Judge James M. Moody protecting communications between the United States and Mr. and Mrs. Black in a case where the Government was enforcing the rights of the couple under the Fair Housing Act. *United States v. Webb,* No. 4:00-CV-698, 2-3 (E.D. Ark. Aug. 1, 2000). Judge Moody opined that although there was no technical attorney-client relationship between the United States and the Blacks, the Government was pursuing the case to enforce their rights under federal law, and it should "not follow that persons who choose to utilize this [Fair Housing] Act give up their right to confidential communications with the attorney representing their interests." Judge

Moody concluded that "[t]he substance and content of these communications between the Government's counsel and the Blacks is protected by the common interest in litigation privilege." *United States v. Webb, supra.*

While the reasoning of *Webb* is persuasive, and the undesigned will apply it as the better approach, it is recognized that finding a common interest between the EEOC and Taylor here is mildly at odds with Taylor's lack of assent to be represented.  Nevertheless, Taylor stands to benefit if the EEOC is successful in representing his interests in this case, and Taylor and the EEOC necessarily share a common interest in this litigation not unlike the common interest Judge Moody recognized in *Webb*.  The Court will thus protect confidential communications between Taylor and the EEOC for the rendering of legal advice as discussed below.

## Attorney Client Privilege & Waiver – Prior Lawyers

The issue of privileged communications arose during Taylor's deposition when Crain's counsel asked Taylor about his communications with his "lawyer" concerning a recording Taylor made.  Both the EEOC and Crain appear to agree that the "lawyer" in question represented Taylor in a different Title VII employment discrimination case against a different defendant, Landers McCarty Bentonville Nissan.[2] The parties disagree on whether Taylor waived this privilege when answering questions during his deposition about those confidential communications.

As noted above, communications between an attorney and her client, "made for the purpose of facilitating the rendition of legal services to the client," are privileged. *See United States v Horvath,* 731 F.2d 557, 561-62 (8th Cir 1984). Equally clear is Eighth Circuit law on waiver – "[v]oluntary disclosure of attorney client communications expressly waives the [attorney-client]

---

[2] Taylor's discrimination case against Landers McLarty Bentonville Nissan, LLC, Civil No. 5:210cv-05071, was resolved through a settlement conference conducted by the undersigned on April 27, 2022.

privilege." *United States v. Hahn*, 58 F.4th 1009, 1012 (8th Cir. 2023) (quoting *United States v. Workman*, 138 F.3d 1261, 1263 (8th Cir. 1998)). Where a party voluntarily testifies about his communications with his attorney, the party waives attorney-client privilege, but the waiver extends only to "any information directly related to that which was actually disclosed." *United States v. Davis*, 583 F.3d 1081, 1090 (8th Cir. 2009) (quoting *Workman*, 138 F.3d at 1263).

During the deposition, Taylor was asked about a recording he made at a June 6, 2022, work meeting at Crain where Taylor thought "racists" things were occurring, and feared he would be fired. (Galen L. Taylor Deposition, pp. 103-110). Taylor testified that his "lawyer" told him to record the meeting, but Taylor clarified he was not referring to the EEOC lawyers present in the room at his deposition. (Deposition, p. 110). While perhaps a poor practice to ask a deponent what his former lawyer advised, the following exchange occurred without objection by the EEOC or hesitation by Taylor:

| | |
|---|---|
| Q | Who told you to record the meeting? |
| A | My lawyer. |
| Q | And when did she tell you that?  This – Ms. Jackson told you to record the meeting? |
| A | No. |
| Q | Ms. Bearden told you to record the meeting? |
| A | No, ma'am. |
| Q | None of the lawyers in the room here? |
| A | No, ma'am. |
| Q | Okay.   When did she tell you that? |
| A | When I told her that – what was going on. |
| Q | When did you tell her what was going on? |
| A | Like, when I told her, like, about that racist incident and stuff, she just said just – |
| Q | When did you tell her? |
| A | I do not recall. |
| Q | Did you tell her the date of the sales meeting? |
| A | I tried to get into contact with her the date at the sales meeting. |
| Q | Did you tell her the date of the sales meeting? |
| A | No ma'am. |
| Q | Did you tell her the next day? |
| A | I don't recall. |

(Deposition, p. 110).  The undersigned finds that Taylor clearly waived the privilege as to the exchange about the recording and to "any information directly related to that which was actually disclosed."  *North Dakota v United States,* 64 F.Supp.3d 1314, 1346-47 (D.N.D. 2014).  Taylor's waiver was intentional – it was neither accidental nor inadvertent.  Fed. R. Evid. 502(a).

The Court notes that later in the deposition, Crain's counsel asked Taylor what his "lawyer at the time" advised Taylor about what Taylor could share with his therapist.  (Deposition, pp. 202-209).  Before Taylor could fully answer, the EEOC's counsel objected, and another acrimonious exchange ensued between counsel.  When Crain's counsel returned to the question, Taylor clarified that he assumed but did not know if he could talk about his litigation during therapy, but testified he did share some litigation information with his therapist. (Deposition, pp. 209-210). Neither the attorney client privilege nor waiver appear implicated in this brief exchange.

Generally, the attorney client privilege protects any remaining confidential communications between Taylor and his prior lawyers in the Landers McLarty matter, provided Taylor has not waived the privilege, and does not waive the privilege when the deposition resumes. While the undesigned 's review of the deposition transcript reveals no other obvious waivers, this observation is made without the benefit of reviewing all the EEOC's discovery responses and thus the Court cannot say with certainty there are no other instances of waiver.

## Attorney Client Privilege with EEOC

Getting to the heart of the parties' remaining dispute, Crain's counsel asked if Taylor "met with these two ladies" – identified as EEOC lawyers Ms. Jackson and Ms. Bearden – before his deposition, asking whether he rode with them to the deposition, when they met and for how long they met.  (Deposition, pp. 10-12)  There was no objection until Crain's counsel asked what Taylor *discussed* with the EEOC's lawyers, and this line of questioning prompted not only objections but

instructions to Taylor not to answer, followed then by a string of accusations by both lawyers which culminated in the involvement of the undersigned. (Deposition, pp. 114-144).

The undersigned finds that these communications between Taylor and the EEOC lawyers are protected from disclosure – deposition preparation with a lawyer is consulting "with a lawyer in his capacity as a lawyer, not some other capacity." *Triple Five of Minnesota, Inc. v. Simon*, 212 F.R.D. 523, 527 (D. Minn. 2002) (citations omitted).   As a practical matter, Crain's counsel should be very careful asking questions which seek to probe the contents of communications between the EEOC's counsel and Taylor related to the filing and prosecution of this litigation.   Deposition preparation may also implicate the protected work-product of the EEOC's attorneys (i.e., mental impressions, thought processes, opinions, legal theories, and strategies) so Crain should steer clear of inquiries about what Taylor and the EEOC counsel have discussed in preparation for the deposition(s) and/or trial.  *See Shelton v. American Motors Corp.,* 805 F.2d 1323, 1328 (8th Cir. 1986).

### Discovery of Taylor's Employment and Medical Records

During the deposition, counsel for Crain complained that the EEOC/Taylor had not provided employment and medical records releases for Taylor until the morning of the deposition which precluded counsel from obtaining records and then examining Taylor about these records. The EEOC responded that medical records previously provided by the EEOC along with other discovery responses concerning Taylor's employment were sufficient.  The undersigned finds that Crain has the better argument here. As pointed out by U.S. District P.K. Holmes, III in *EEOC v. Randall Ford, Inc.,* 298 F.R.D. 573 (W.D. Ark. 2014), Crain does not have to agree with the EEOC about which records are discoverable or accept the universe of documents provided by the EEOC in its discovery.  While the undersigned cannot order a non-party such as Taylor to produce items,

Crain has had sufficient time since obtaining the releases to exercise subpoena power and obtain medical and employment records for Taylor.  Crain will be entitled to examine Taylor concerning these records.

### Conclusion

Taylor's deposition was held open and may now resume consistent with this Order and the Federal Rules of Civil Procedure.

Because the Court anticipates the parties may need further instruction, the undersigned offers the following guidance:

- The deposition of Taylor may resume at an agreeable date but must be concluded **not later than the close of business on Friday, November 22, 2024.**  This requires a modest extension of Judge Brooks' discovery deadline **from October 31, 2024, to November 22, 2024.**

- Extension of the discovery deadline requires a modest extension of the dispositive motion deadline **from November 22, 2024, to December 20, 2024.**

- As Taylor resides in Northwest Arkansas, the deposition should occur in Northwest Arkansas unless Taylor agrees to travel a second time to Little Rock.

- No time limitation will be imposed for concluding the Taylor deposition; however, the parties should be mindful of the time spent during the first deposition.

- Neither party should re-ask questions which did not draw objections in the first deposition unless records discovered cause counsel to revisit a question or line of questioning.

- Counsel may inquire about all medical and employment records obtained during discovery; counsel may inquire about the June 6, 2022, recording made by Taylor since

the privilege has been waived; and counsel may ask other appropriate questions which do not seek the contents of confidential communications between the EEOC and Taylor for the purpose of legal advice.

- The EEOC may conduct and conclude its examination of Taylor during this deposition; the undersigned notes the EEOC was provided less than fifteen (15) minutes to inquire during the prior deposition.

- All counsel are reminded that objections should not devolve into personal attacks.

**IT IS SO ORDERED this 29th day of October 2024.**

*Christy Comstock*

**CHRISTY COMSTOCK**
**U.S. MAGISTRATE JUDGE**